**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| POSEIDON RESOURCES LLC<br>Plaintiff/Counterclaim Defendant,<br>v.<br><br>PROGITEC MTP S.R.L.,<br>Defendant/Cross-Claim Defendant,<br><br>EQUIPNET, INC.,<br>Defendant/Counterclaimant/<br>Cross-Claimant,<br><br>TUVIA ITALIA S.P.A.,<br>Defendant, and<br><br>MSC MEDITERRANEAN SHIPPING<br>COMPANY S.A.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-00056-JAM |

**AMENDED NOTICE TO TAKE DEPOSITION OF CORPORATE REPRESENTATIVE(S) OF PLAINTIFF POSEIDON RESOURCES LLC**

| | |
|---|---|
| TO: | All Counsel of Record |
| PERSON TO BE DEPOSED: | Poseidon Resources LLC Corporate Representative |
| DATE AND TIME: | **Wednesday, November 4, 2026, at 9:00 a.m.** |
| LOCATION OF DEPOSITION: | Baker Sterchi Cowden & Rice LLC, 2400 Pershing Road, Suite 500, Kansas City, Missouri 64108 |
| COURT REPORTER: | Veritext Legal Solutions |

YOU ARE HEREBY NOTIFIED that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant EquipNet, Inc. ("EquipNet"), by and through counsel of record, shall take the deposition of **THE CORPORATE REPRESENTATIVE FOR PLAINTIFF POSEIDON RESOURCES LLC ("Poseidon"),** whom EquipNet has requested to designate one or more officers, directors, managing agents, or other persons who consent to testify on Poseidon's behalf in the above-styled cause.

Pursuant to said Rule 30(b)(6), you are required to designate and fully prepare one or more officers, directors, managing agents, or other persons who consent to testify on behalf of Poseidon regarding the following Matters for Examination contained in Exhibit A.

Said deposition will be taken before a person authorized to administer oaths to be used for discovery and as evidence at trial in the above-captioned matter. The deposition will be recorded by stenographic means by an authorized representative of Veritext Legal Solutions.

BAKER STERCHI COWDEN & RICE LLC

/s/ Dylan L. Murray

James Scott Kreamer MO #39682
Dylan L. Murray MO #46373
2400 Pershing Road
Suite 500
Kansas City, Missouri 64108
Tel: 816/471-2121
Fax: 816/472-0288
kreamer@bakersterchi.com
dmurray@bakersterchi.com
ATTORNEYS FOR DEFENDANT EQUIPNET, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties, including the parties' counsel of record identified below.

Jake Miller
Conner Mitchell
GRISSOM MILLER LAW FIRM, LLC
1600 Genessee Street, Ste. 460
Kansas City, Missouri 64102
Phone: (816) 336-1213
Fax: (816) 384-1623
jake@grissommiller.com
CAM@grissommiller.com
ATTORNEYS FOR PLAINTIFF POSEIDON

Daniel L. Massey
Stone, Leyton & Gershman, P.C.
7733 Forsyth Boulevard
Suite 500
Saint Louis, Missouri 63015
Phone: (314) 721-7011
dmassey@stoneleyton.com

-and-

Patrick F. Lennon
Steven R. Winters
Lennon, Murphy & Phillips, LLC
420 Lexington Ave., Suite 300
New York, New York 10170
Phone: (214) 490-6050
pfl@lmplaw.net
srw@lmplaw.net
ATTORNEYS FOR DEFENDANT TUVIA

/s/ Dylan L. Murray

# EXHIBIT A — MATTERS FOR EXAMINATION

For purposes of these topics, the "Machine" refers to the IMA F573 filling and capping machine, serial number 573033, purchased in 2025. The "Transaction" refers to the Machine's purchase, payment, packing, shipment, delivery, claimed damage, insurance, storage, inspection, and related claims. Unless stated otherwise, the relevant period is May 1, 2025 through the deposition date.

1. **Plaintiff's representatives and sources of knowledge.** The identities and involvement of Poseidon personnel having knowledge of the Transaction, including Chad Hueffmeier, Richard Best, Colton Best, and Kathi Miley, and the sources of information available to Poseidon regarding the Transaction.

2. **Negotiations and sale.** The listing, offer, acceptance, negotiations, invoices, purchase terms, and parties involved in the sale of the Machine, including Poseidon's understanding of the respective roles of Progitec and EquipNet.

3. **EquipNet contractual terms.** Poseidon's registration and use of EquipNet's online services; its receipt, review, acknowledgment, and acceptance of EquipNet's General Terms of Service and Buyer's Terms of Service; the persons who accepted them; any objections, modifications, or purported alternative terms; and the specific Terms themselves.

4. **Other agreements or undertakings.** Any oral or written agreement, representation, or modification by which Poseidon contends EquipNet agreed to inspect, warrant, pack, load, ship, insure, store, repair, replace, or refund the Machine or otherwise assume responsibility for its condition or delivery.

5. **Agency allegations.** All facts supporting Poseidon's allegation that EquipNet acted as the agent of Progitec or Poseidon, including the claimed scope of authority, representations, conduct, reliance, and supporting communications.

6. **Representations and warranties.** Every representation or warranty Poseidon contends EquipNet made concerning the Machine's condition, suitability, operating capacity, quality, merchantability, fitness, completeness, delivery condition, or repairability, including the speaker, date, substance, and reliance claimed.

7. **Payments and disposition of purchase funds.** The payments made by Poseidon, the amount and purpose of each payment, the recipients, the separation of the Machine purchase price from broker and logistics fees, and any facts supporting allegations that EquipNet improperly retained or failed to transmit identifiable funds.

8. **Ownership and risk of loss.** The timing and circumstances of transfer of title, ownership, and risk of loss, including Poseidon's understanding of Progitec's June 10, 2025 ownership declaration and any contractual provision that Poseidon contends allocated such risk to EquipNet.

9. **Condition before shipment.** Poseidon's knowledge of the Machine's condition before purchase and shipment, any inspection or testing performed, the representations and documents it relied upon, and its decision whether to arrange a pre-shipment inspection.

10. **Crating and packaging.** The preparation, securing, and packing of the Machine in a crate and then within a larger shipping container; the parties responsible; Progitec's crating services; alleged deficiencies; every act or omission by EquipNet alleged to have contributed to inadequate packaging in the crate and/or in the shipping container; and the role and conduct of Progitec, Tuvia, and MSC in the packaging, crating, loading, handling, shipping, carriage, and insurance of the Machine.

11. **Shipping and logistics.** The parties responsible for selecting, contracting with, instructing, and paying the shipping and transportation providers; the services performed by Tuvia, MSC, Progitec, and others; and any specific logistics undertaking Poseidon attributes to EquipNet.

12. **Shipping documents, custody, and damage chronology.** Bill of Lading or Sea Waybill No. MEDUGK220424, container MSMU5785870, records of shipment and custody, the identification of the first observed damage, and all facts concerning when, where, how, and by whose conduct the Machine allegedly sustained damage.

13. **Delivery and rejection.** The attempted delivery in July 2025, observed conditions, decisions regarding unloading and rejection, safety concerns, notifications, instructions, and options considered for inspection, unloading, or retrieval.

14. **EquipNet-specific alleged wrongful conduct.** For each breach of contract, breach of warranty, or negligent act or omission attributed to EquipNet in Counts I–III of the Complaint, the specific act or omission, date, person involved, duty or undertaking claimed, factual basis, supporting nonprivileged documents, and alleged causal connection to the damage.

15. **Inspection, repairability, and machine value.** The inspections, surveys, photographs, technical findings, test results, manufacturer communications, repair estimates, claimed damage to individual components, salvage value, and facts supporting any allegation that the Machine is unusable, beyond economical repair, or a total loss.

16. **Insurance and claims.** All insurance coverage applicable to the Transaction, the shipment, or the Machine, including the transit/cargo coverage obtained through Tuvia or Generali Italia, and any claim, notice, or communication Poseidon made or considered making on any such coverage, and the status and outcome of any such claim.

17. **Storage, custody, and control.** The arrangements for warehouse storage, all parties possessing or controlling the Machine, instructions to the warehouse, storage invoices and payments, requests for release, available alternatives, Poseidon's ability to obtain possession of or direct disposition of the Machine; and the current location, custody, and storage of the Machine.

18. **Conversion allegations.** The identity of each specific item of property, identifiable fund, payment, account, or insurance proceeds that Poseidon contends EquipNet converted; the manner and date of alleged wrongful control; all demands and responses; and the factual basis for contending EquipNet possessed or withheld such property.

19. **Mitigation of damages.** Poseidon's efforts, or lack thereof, to mitigate its alleged damages, including the consideration and pursuit of inspection, testing, repair, insurance recovery, return, acceptance, storage, resale, salvage, replacement equipment, outsourcing, leasing, and other reasonable alternatives to reduce claimed losses, including the reasons any such alternative was rejected.

20. **Purchase, inspection, labor, and storage damages.** The calculation of the claimed Machine price ($97,869.68), the $23,100 inspection/evaluation charge, $240,987.20 in labor, shipping and insurance expenses, warehouse charges, and other out-of-pocket losses; amounts actually incurred or paid; factual basis and supporting documents; and the causal connection to EquipNet's alleged conduct.

21. **Lost revenue and lost profit.** The calculations underlying the claimed $1,537,528.14 in estimated lost business revenue and $584,260.70 in estimated lost profit, including the affected customers, orders, projected production, revenue assumptions, expenses, profit margins, time periods, alternative production capability, and any duplication between categories.

22. **Business operations and financial history.** Poseidon's business operations, profitability, financial statements, tax returns, production capability, customers, employees, equipment, operating history, and anticipated use of the Machine, insofar as relevant to the alleged losses and their calculation.

23. **Poseidon demands and communications.** Poseidon's demands for a refund, replacement, or other relief directed to EquipNet or any other Defendant, and all non-privileged communications relating to the Transaction, the Machine, the alleged damage, and this lawsuit.

24. **Poseidon discovery responses.** All discovery responses and supplemental discovery responses of Poseidon, including the factual basis for such responses.

25. **Nonprivileged supporting evidence and witnesses.** The identity and location of business records, communications, photographs, videos, inspection reports, financial records, and persons with relevant knowledge supporting the factual allegations, causation contentions, and damages described in the preceding topics, including any records or documents identified in and/or produced in connection with Poseidon's discovery responses and supplemental discovery responses or in connection with the discovery responses of the other parties including EquipNet and Tuvia.